**LESAL INTERIORS, INC., Plaintiff,**

v.

**RESOLUTION TRUST CORPORATION, as Receiver for CorEast Savings Bank, F.S.B., et al., Defendants.**

Civ. A. Nos. 91–2595, 93–5152 (SSB).

United States District Court, D. New Jersey.

Jan. 11, 1994.

**554**

H. Thomas Hunt, III, Carlo Scaramella, Hunt and Scaramella, Cherry Hill, NJ, for plaintiff.

Ann F. Kiernan, Jamieson, Moore, Peskin and Spicer, Princeton, NJ, for Resolution Trust Corp. as Receiver for defendant CorEast Sav. Bank, F.S.B., and defendant Colonial DPC Corp. I.

Jeffrey I. Baron, Voorhees, NJ, for defendant Echelon Glen Resident Owners Ass'n.

Barry Segal, Toll and Segal, Morganville, NJ, for POLIS Housing Foundation Corp. VI.

## OPINION

ROSEN, United States Magistrate Judge:

Presently pending before this court are three motions in these consolidated matters:

1. Plaintiff's motion to compel discovery relating to settlement agreement;[1]

2. Defendant Echelon Glen Resident Owners Association's motion for a protective order; and

3. Plaintiff's motion for order to show cause why a temporary restraining order should not issue enjoining settlement agreement (currently returnable on February 4, 1994).

The first two motions were returnable on January 5, 1994, and oral argument was at that time heard on the record before this court. The first two motions are herein decided. The third motion, which had been originally returnable on January 14, 1994, has now been rescheduled for February 4, 1994, at 10:30 a.m. At that time, the hearing on the order to show cause shall be had in conjunction with oral argument on defendants' motion(s) for dismissal, in regard to which this court will submit a report and recommendation to Judge Brotman. The parties were directed at oral argument that any opposition to defendants' motion(s) to dismiss should be filed by January 19, 1994, and any reply to the opposition be filed by January 26, 1994.

### I. Factual History.

This action arises out of a contract dispute for the payment of services in which plaintiff Lesal Interiors, Inc. ("Lesal") alleges that $778,000 is due under a construction contract for the renovation of the Echotree Glen Apartment complex located in Voorhees, New Jersey. The apartment complex was acquired by Echotree Associates ("Echotree") in 1987 with the intention of its conversion into condominium units. To this end, Echotree obtained loans from CorEast Sav-

---

1. The settlement negotiations at issue stem from *FDIC v. Echelon Glen Cooperative, Inc.*, Civil No. 92–3886 (JHR), which is currently before Judge Kugler in pre-trial.

ings Bank, F.S.B. ("CorEast"), which were secured by a leasehold mortgage granting to CorEast a security interest in the leases of certain of the cooperative units. The conversion of the complex to cooperative ownership took place in August 1988.

On December 5, 1988, Lesal entered into a contract with Echotree for the renovation of 110 units at the apartment complex. In February 1989, Echotree transferred its interest in the complex to Echelon Glen Cooperative. By the summer of 1989, Echotree had fallen $778,000 behind in its payments to Lesal under the contract. In the fall of 1989, in a meeting held between Lesal, CorEast, Echotree, and others, Lesal alleged that it was given assurances that it would be paid, and that in reliance upon this oral agreement, it continued work on the renovation project. The substance of this alleged agreement was the subject of dispute in the summary judgment motions and at trial.

In June of 1990 the project failed, and thereafter Lesal received no further payments. On June 25, 1990 the parties involved in the project entered into a settlement agreement ("1990 settlement agreement"), the construction of which was also the subject of dispute in the summary judgment motions and at trial. Under the 1990 settlement agreement, CorEast, through its newly-created subsidiary, Colonial, released Echotree from $6 million in existing debt; CorEast provided Colonial with an additional $6 million for the payment of accrued payables and expenses, and for maintenance and construction expenses. In exchange, Colonial became the owner of unsold shares and proprietary leasing rights to 515 apartment units. Also in the agreement, and subject of dispute in the motions, and at trial, was Colonial's agreement to pay "Construction Payables" on Echotree's behalf, and "to defend, indemnify and hold harmless Echotree ... from such payable." Schedule C of the agree listed payables including $690,000 due to Lesal under the renovation contract. All these issues related to both the fall 1989 meeting, and the June 1990 settlement agreement, were the subjects of fierce disputes in the summary judgment motions, and

2. As originally filed, Lesal's complaint sought recovery only from Echelon Glen Cooperative and the "Michaels" defendants, and sought only

at trial, and were thoroughly dealt with in Judge Brotman's opinions of March 30, 1993 (on the summary judgment motions), and October 20, 1993 (on the trial issues).

## II. Procedural Aspects and History of Civil No. 91–2595.

This action (and the accompanying, consolidated action in no. 93–5152) stems from the aforementioned renovation of the Echotree Glen Apartments, and their conversion into condominiums. This action was initially filed in July 1990 in the New Jersey Superior Court by the plaintiff, Lesal. Lesal sought the recovery of $778,000 due for work it had done in 1989 in the Echotree renovations. On February 1, 1991, CorEast was declared insolvent, and the Resolution Trust Corporation (RTC) was substituted as receiver for CorEast in the Superior Court. On May 9, 1991 the RTC removed the action to the District Court for the District of Columbia, and in June 1991 it was transferred to the District of New Jersey.

The District Court, on May 3, 1992, granted Lesal leave to file an amended complaint, and Lesal added a number of claims against CorEast and/or Colonial for recovery of the $778,000: [2]

Count V: alleged that Lesal is subrogated to Echotree's rights against Colonial under the 1990 settlement agreement;

VI: alleged that Colonial is liable in *quantum meruit* to Lesal for the value of Lesal's renovation work;

VII: alleged that Colonial is liable under a theory of unjust enrichment;

VIII: alleged that Lesal is the third-party beneficiary of the 1990 settlement agreement;

IX: alleged that Colonial is an alter ego of CorEast, thus making CorEast liable for any debts, obligations, or liabilities owed by Colonial to Lesal;

X: alleged that CorEast is liable for the monies due under the renovation contract on a theory of promissory estoppel; and

to establish the priority of its alleged mechanics lien over the interests of CorEast and Colonial.

XI: alleged that CorEast, Colonial and other defendants are liable for fraud.

On November 25, 1992 a default judgment was entered against the Michael defendants in favor of Lesal, in the amount of $778,000. On March 30, 1993 the Hon. Stanley S. Brotman entered an order granting CorEast's and Colonial's motion for summary judgement with respect to counts V, VI, VII and X of the amended complaint.

On May 24, 1993 a one-day bench trial was conducted on counts VIII, IX and XI, on the third-party beneficiary, fraud and alter ego theories. On April 23, 1993 Lesal filed a motion to compel turnover of funds.

On October 20, 1993 the Hon. Stanley S. Brotman entered judgment as to the remaining trial issues, and found in favor of the defendants as to each. On December 21, 1993 Judge Brotman ordered the consolidation of Civil No. 93–5152 with 91–2595. Finally, on December 21, 1993, Judge Brotman denied Lesal's motion to compel turnover of funds from Colonial under N.J.S.A. § 2A:17–53 *et seq.*

### III. Summary of the Court's Holdings in Civil No. 91–2595.

In considering Civil No. 93–5152, the motion to compel discovery, the motion for protective order, and the order to show cause, it is appropriate, and may be crucial to the resolution of the instant matters, and perhaps the case as a whole, to paint an overview of Judge Brotman's holdings in Civil No. 91–2595 as they relate to CorEast, Colonial, EGROA, RTC and POLIS. The subject matter of the two actions is identical (the parties' liability under various theories for the money owed Lesal), the parties as well are identical, and serious concern may well exist as to whether, in view of *res judicata* and the entire controversy doctrine: (1) whether Lesal has standing to seek the discovery requested in its motion to compel, (2) whether it has standing to seek a restraint against the defendants' settlement efforts, and (3) whether Lesal, as a result of Judge Brotman's summary judgment determinations, trial judgment, and related orders in Civil No. 91–2595, is estopped from any further litigation of the subject matter of Civil No. 93–5152. If the subject matter and the parties, and indeed the issues, of the latter of these two cases is identical; if the issues which Lesal now seeks to litigate in the second action, and in connection with it sought injunctive relief, has already been litigated to judgment before Judge Brotman, it may not now seek to do so.

### 1. Colonial's Liability Under a Theory of Subrogation.

On March 30, 1993 Judge Brotman granted summary judgment in favor of defendants on Count V of Lesal's amended complaint, which had alleged that Lesal was subrogated to Echotree's rights against Colonial under the 1990 settlement agreement. The court held that a failure by Echotree to pay Lesal what was owed did not act to subrogate Lesal to any right Echotree may have possessed for indemnification as against Colonial. March 30, 1993 Opinion, at 6–8.

### 2. Colonial's Liability Under Theories of Quantum Meruit and Unjust Enrichment.

On March 30, 1993 Judge Brotman granted summary judgment in favor of defendants on Counts VI and VII of Lesal's amended complaint, which had alleged claims in *quantum meruit* and unjust enrichment for the benefit Lesal claims it conferred upon Colonial in the performance of the unpaid renovation work. The court held that recovery in *quantum meruit* or under a theory of unjust enrichment was unavailable because Lesal did not directly confer a benefit upon Colonial (nor upon CorEast), rather, held the court, any benefit was bestowed upon Echotree. March 30, 1993 Opinion, at 8–9.

### 3. CorEast's Liability Under a Theory of Promissory Estoppel.

On March 30, 1993 Judge Brotman granted summary judgment in favor of defendants on Count X of Lesal's amended complaint, in which Lesal had alleged that CorEast was estopped from denying liability under an alleged oral promise from the fall of 1989, because Lesal completed the renovation project in reliance upon a promise by CorEast, now under RTC receivership, that it would be paid. The court held that the alleged promise by CorEast to induce Lesal to com-

plete its work was a "side agreement" within the meaning of the *D'Oench Dhume* [3] doctrine and 12 U.S.C. § 1823(e), and that Lesal was therefore precluded from asserting a claim against CorEast based upon the alleged fall 1989 oral promise. March 30, 1993 Opinion, at 15–18.

### 4. Lesal's Third–Party Beneficiary Claim Against Colonial.

On October 20, 1993 Judge Brotman, pursuant to a bench trial conducted May 24, 1993, rendered judgment for the defendants on all remaining claims, including Count VIII, plaintiff's claim that it was a third-party beneficiary under the 1990 settlement agreement between Colonial and Echotree for the payment of construction payables. The court held that Lesal's third-party claim was barred under *D'Oench Dhume* and § 1823(e), as: (1) there was no writing sufficient to evidence an intent to make Lesal a third-party beneficiary, and (2) that the agreement was insufficient to put the RTC, as receiver, on notice of such a claim, and as such it was not "on the books" of the corporation. October 20, 1993 Opinion, at 23–28.

### 5. Lesal's Fraud Claim.

On October 20, 1993 Judge Brotman rendered judgment for the defendants on Count XI of Lesal's amended complaint, in which Lesal claimed it had been defrauded by the alleged oral misrepresentation by CorEast, assuring Lesal that it would be paid for its work. The court held that, whether the fraud allegation was viewed as a "free-standing tort," such a claim alleging a bank's promise of payment on behalf of a defaulted borrower still fell within the scope of *D'Oench Dhume* and § 1823(e). Additionally, the court concluded independent of these doctrines that "Lesal's fraud claim is without merit." October 20, 1993 Opinion, at 28–29.

### 6. Lesal's Piercing the Corporate Veil Claim.

On October 20, 1993 Judge Brotman rendered judgment for the defendants on Count IX of Lesal's amended complaint, in which Lesal sought to pierce Colonial's corporate veil and reach CorEast. The court declined to determine whether CorEast could have been held liable under this theory in view of *D'Oench Dhume* and § 1823(e) as, noted the court, "Colonial has not been found liable on any count." October 20, 1993 Opinion, at 29.

### 7. Lesal's Motion to Compel Turnover of Funds.

One final matter remained subsequent to Judge Brotman's October 20, 1993 trial decision, the plaintiff's April 23, 1993 motion to compel the turnover of funds, directed to Colonial, in an attempt to satisfy its November 25, 1992 default judgement against defendants Echotree Associates and HLM/Echotree, Inc. Lesal sought to satisfy the Judgment against Echotree pursuant to N.J.S.A. 2A:17–53, *et seq.*, which permits a judgment creditor to execute against debts owed to a judgment debtor by a third-party garnishee. Lesal had alleged in its motion that under the settlement agreement between Echotree and Colonial, Colonial was required to indemnify Echotree's construction debts up to $690,000. The court held, however: (1) that Colonial is not contractually indebted to Echotree; (2) that liability

---

**3.** *D'Oench, Dhume & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). This doctrine bars recovery from a failed banking institution based on oral or written side agreements that are not reflected on the books and records of the failed institution. *See Adams v. Madison Realty & Development, Inc.,* 937 F.2d 845 (3d Cir.1991). The doctrine protects the RTC's rights in assets acquired from the failed bank. 12 U.S.C. § 1823(e), in which Congress codified the *D'Oench Dhume* doctrine, provides:

No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this titel, either as security for a loan or by purchase or as a receiver of any insured

depository institution shall be valid against the Corporation unless such agreement—

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

under an indemnification agreement, does not constitute an existing debt (until the indemnifying party admits the debt or the party seeking enforcement obtains a judgment enforcing the agreement); (3) that Colonial did not agree to pay or admit the alleged debt; and (4) that Echotree has done nothing to perfect its alleged rights under the agreement.

Accordingly, Judge Brotman found for the defendants and against Lesal in its motion to compel turnover of funds.

### IV. Overview of the Current Proceedings and Civil No. 93–5152.

■ Currently at issue are several motions, all of which relate to settlement negotiations which are underway as between a number of the defendants, including Colonial, EGROA, POLIS and the RTC, and one or more non-parties to these actions, including the Federal Deposit Insurance Corporation ("FDIC"). The pendency of these negotiation was brought to light during a conference held in these chambers on December 2, 1993. Pending are the motions of Lesal for an order compelling discovery of documents believed to be related to these settlement negotiations (referred to as the "work out"), and defendant EGROA's motion for a protective order.[4] Also at issue is plaintiff's application for an order to show cause why the defendants should not be enjoined from entering into a settlement agreement pursuant to the current negotiations.[5]

The discovery motions, the order to show cause, as well as the plaintiff's second action (Civil No. 93–5152) and the motions to dismiss (if and when they are filed), are all inextricably bound together. The discovery motions relate to the discovery of information concerning the "work out," the defendants' current settlement negotiations. The order to show cause seeks to block the occurrence of any such settlement on the grounds that it constitutes a fraudulent conveyance of the assets at issue: the remaining shares in the apartment units.

The plaintiff's second complaint, Civil No. 93–5152, asserts the following four counts:

Count I: Fraudulent Conveyance—this count alleges that Colonial intends to enter into a "refinancing or workout" transaction of the Echelon Glen project "with intent to defraud creditors of Colonial, among them, Lesal"

II: Declaratory Judgment—asserts that Lesal "will be a judgment creditor of Colonial pursuant to a turn over motion"—or alternatively, "Lesal will be a judgment creditor of Colonial pursuant to an assignment of Echotree Associates, L.P.'s contract rights under the settlement agreement"

"Lesal also expects that, once it obtains judgment against Colonial, it will also be able to obtain a judgment against the RTC on the grounds that Colonial was an 'alter ego' of CorEast"

Under the EGROA–RTC and POLIS–EGROA agreements, "POLIS and EGROA are liable to Lesal for any judgment against Colonial and/or RTC"

III: Alter Ego—"Colonial is or was the alter-ego and instrumentality of the RTC, EGROA and POLIS"—"demands ... that this court declare that the RTC, EGROA and POLIS are jointly and severally liable to Lesal"

IV: Alter Ego—"HLM/Echotree, a judgment debtor of Lesal, was the mere alter-ego or instrumentality of Michaels"—"demands ... that this court enter judgment against Howard Michaels"

---

4. Lesal appears to find of significant consequence, as expressed in its papers, that only one of the defendants, EGROA, has filed a motion for a protective order in response to Lesal's motion to compel. The court notes, however, that in any event, under *Fed.R.Civ.P.* 26, and the discretion allocated this court in the management of discovery generally, where a court determined to deny a motion to compel, it may, if circumstances so justify, enter a protective order *sua sponte*. The converse is likewise a possibility. In the present context, it is not of major significance that nei-

ther Colonial not POLIS filed motions for protective orders, so long as this court is able to determine their basis for objecting to the plaintiff's discovery requests.

5. Defendants have also indicated their interest in filing motions to dismiss as to Civil No. 93–5152. As previously noted, this court has rescheduled the order to show cause to be heard contemporaneous with the defendants' motion(s) to dismiss, on February 4, 1994, at 10:30 a.m.

## Count I

■ It appears quite clear that Count I in Lesal's second action is the predicate upon which it has filed its motion for an order to show cause, and in pursuance of which seeks discovery of the materials related to the defendants' work out or settlement negotiations. Count I asserts that the defendants, including Colonial, are engaging in the settlement negotiations "with intent to defraud creditors of Colonial, among them, Lesal." Lesal's interest in Count I, and interest and standing to pursue both its motion to compel discovery of the settlement documents, and its order to show cause, derives, if at all, directly from the substance of this assertion: that Lesal stands in this matter as a creditor of Colonial.

Lesal asserts, in ¶ 19 of the current amended complaint, that it "will be a judgment creditor of Colonial, pursuant to the indemnity provisions of the Colonial–Echotree agreement." This has been foreclosed by Judge Brotman's December 21, 1993 denial of Lesal's motion to compel turnover of funds. (See III–7 above.) In the course of Lesal's first case, by either summary judgment, or judgment from the trial, Judge Brotman ruled against Lesal on all its theories of liability as against Colonial: subrogation to Echotree's rights against Colonial; *quantum meruit*; unjust enrichment; that Colonial was the alter ego of CorEast; and on grounds of fraud as between CorEast, Colonial and others. (See III–1, 2, 5 & 6 above.)

## Count II

Count II of Lesal's second action, asserts that Lesal will be a judgment creditor of Colonial either (1) pursuant to the motion to compel turnover of funds (already foreclosed, as discussed above), or (2) as a result of "an assignment of Echotree Associates, L.P.'s contract rights under the settlement agreement." The remainder of Lesal's Count II contentions, relating to alter ego liability as between Colonial and the RTC, and indemnification as a consequence of the EGROA–RTC and POLIS–EGROA agreements, needs not be dealt with if Lesal cannot demonstrate that it is a judgment creditor of Colonial.

■ Lesal's second assertion, that it shall be a judgment creditor of Colonial by virtue of Echotree Associate's assignment of its contract rights under the settlement agreement has already been partially dealt with by Judge Brotman in his December 21, 1993 opinion denying the motion to compel turnover of funds by Colonial. Judge Brotman, while not deciding the issue, discussed the potential for Echotree to proceed against Colonial and assert its alleged right to indemnification under the 1990 settlement agreement:

> [I]t is quite possible that Echotree, were it to litigate the indemnification issue against the RTC as receiver for Colonial, would be unable to enforce the indemnification agreement.... Obligations stemming from the Settlement Agreement may be unenforceable against the RTC under the *D'Oench Dhume* doctrine and ... 12 U.S.C. § 1823.... As noted in this court's October 20, 1993 opinion, Colonial's board of directors never ratified the Settlement Agreement, as is required under § 1823(e)(3).

December 21, 1993 Opinion, at 5 & note 3. Although Judge Brotman did not need to reach this issue in his denial of Lesal's motion, it appears fairly clear from the discussion in the October 20, 1993 and December 21, 1993 opinions, that Echotree is unlikely to prevail in any indemnification claim as against Colonial under its RTC receivership. It therefore appears that were Echotree to assign to Lesal any such prospective right to seek indemnification under the settlement agreement from Colonial, Lesal could not prevail where Echotree could not.

## Count III

■ Count III of Lesal's second action, asserts that Colonial is the alter-ego of the RTC, EGROA and POLIS, and that therefore these entities should be held jointly and severally liable to Lesal for amounts which it (apparently) expected Colonial to have been held liable for under its motion to compel turnover of funds. Obviously, this count has been foreclosed by Judge Brotman's denial of Lesal's motion.

### Count IV

Lesal asserts in Count IV of its second action, that HLM/Echotree, against which it has a default judgment from the first action, is the alter ego of Howard Michaels, and seeks therefrom a judgment of liability against Michaels for HLM/Echotree's debt. This count is of little practical significance in the context of the remainder of these proceedings, except to note that, as with other related issues, this one may be foreclosed under the entire controversy doctrine.

### V. Viability of Civil No. 93–5152.

As the foregoing discussion would seem to indicate, and this is perhaps best tested through dispositive motion practice by the defendants, the viability of Lesal's entire second action appears seriously in question. The prime thrust of the action appears to have hinged upon Lesal's assumption, now seen to have been erroneous, that it would prevail in its motion to compel turnover of funds from Colonial, predicated upon Colonial's liability for the debts of Echotree under the 1990 settlement agreement. It also appears likely that Count II would fail as a matter of law as foreshadowed in Judge Brotman's December 21, 1993 opinion. Count III, alleging Colonial to be the alter-ego of RTC, EGROA and POLIS, must also fail if Colonial bears no liability.

### VI. Lesal's Motion to Compel Discovery of Settlement Documents.

Lesal's motion to compel documents relating to the ongoing settlement negotiations of the defendants, must of necessity be considered in the light of the pending order to show cause to enjoin consummation of such an agreement and of Lesal's legal position in its two actions. Lesal seeks, in essence, to delve into and to force a halt to settlement negotiations aimed at working out a resolution to the remaining financing problems of the Voorhees apartment complex, currently ongoing among the defendants and non-parties to these matters.

The question of whether a party in one action can seek discovery of ongoing settlement negotiations in a different action to which it is not a party appears to be one of first impression in this circuit. For Lesal to inquire in discovery into the settlement negotiation in a different case, let alone prevail on an injunctive basis, it must, at bare minimum, show that it has a legally cognizable interest. The standard, naturally, which Lesal must meet in obtaining the injunctive relief it seeks, is much higher, i.e., a showing of irreparable harm from the activity it seeks to enjoin, and a showing of a likelihood of success on the merits in the underlying litigation. The underlying litigation is Lesal's second action, already outlined above.

Discovery is governed by Rule 26 of the Federal Rules of Civil Procedure, which provides in part:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

*Fed.R.Civ.P.* 26(b)(1). The broad scope of discovery rules and the liberal interpretation given them by the courts demonstrates that Congress realized that a "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507–508, 67 S.Ct. 385, 391–392, 91 L.Ed. 451 (1947).

Speaking on the meaning of "relevancy" in the discovery context, the Supreme Court held that " 'relevant to the subject matter involved in the pending action'—has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978) (citations omitted). While generally, the scope of discovery is broad, it is well recognized that "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947). Thus, if discovery is not "reasonably calculated to lead to the discovery of admissible evidence" it is not within the scope of Rule 26(b)(1). *Op-*

*penheimer Fund, Inc.,* 437 U.S. at 352, 98 S.Ct. at 2390.

Where the material sought is relevant, the burden is on the party seeking nondisclosure or a protective order under *Fed. R.Civ.P.* 26(c) to show good cause for nondisclosure. *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir.1986), *cert. denied,* 479 U.S. 1043, 107 S.Ct. 907, 93 L.Ed.2d 857 (1987); *Penthouse International, Ltd. v. Playboy Enterprises Inc.,* 663 F.2d 371, 391 (2d Cir.1981). Rule 26(c) provides that:

> Upon motion by a party or by the person from whom discovery is sought ... the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, ...

The defendants have asserted, both in their papers and at the December 2, 1993 conference, that the sensitive nature of the settlement negotiations with the non-parties is such that any substantive interference in the negotiations, particularly Lesal's obtaining an order restraining their entry into the agreement, will destroy the negotiations and any chance for the consummation of a settlement agreement. As to the discovery of the settlement documents, the defendants assert that such documents are utterly irrelevant to this litigation and are otherwise confidential. Although evidence of settlement negotiations is generally inadmissible under *Fed.R.Evid.* 408 as irrelevant and contrary to public policy, this rule refers to settlements of the claims at issue in the subject litigation. *See, e.g., Bank of America Nat'l Trust v. Hotel Rittenhouse,* 800 F.2d 339 (3d Cir.1986).

In this instance, Lesal seeks discovery not of settlement negotiations between parties in *this* litigation, but rather, discovery of settlement negotiations taking place in an entirely *separate* litigation, *FDIC v. Echelon Glen Cooperative, Inc.,* Civil No. 92–3886 (JHR).[6] In fact, it is the settlement negotiations per se, and their potential outcome, which forms the basis for Lesal's Count I in its second action. Lesal has alleged that one of the purposes of the settlement is to "defraud

creditors of Colonial, among them Lesal." Lesal, in its arguments, has attempted to characterize the fact that it was not included as a party to Civil No. 92–3886 as being " 'frozen out' of that process." Letter of H. Thomas Hunt, III, January 5, 1994, at 2. It is agreed by all concerned, however, including counsel for Lesal, that Lesal has been aware of the existence of the *FDIC* action since its inception. Counsel for defendants have suggested, and this court agrees, that Lesal could have directly sought to intervene in the *FDIC* action, thus making it a party to any proceedings occurring therein. It has chosen not to do this.

As already noted, *Fed.R.Evid.* 408 makes inadmissible any evidence of settlement negotiations:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

Nevertheless, such evidence of settlement negotiations may be discoverable under *Fed. R.Civ.P.* 26's broad discovery provisions, provided such evidence "appears reasonably calculated to lead to the discovery of admissible evidence." *Fidelity Federal Savings and Loan Association v. Felicetti,* 148 F.R.D. 532, 533–34 (E.D.Pa.1993).

The Third Circuit has not directly addressed the question of whether this showing, generally considered to be fairly low in consideration of the very broad aims of Rule 26, should be higher where it is discovery of settlement negotiations. *Fidelity Federal,* 148 F.R.D. at 534; *see Morse/Diesel, Inc. v. Fidelity and Deposit Co.,* 122 F.R.D. 447, 449 (S.D.N.Y.1988). However, as Judge Joyner noted, "the principles underlying *Fed.R.Evid.* 408 and *Fed.R.Civ.P.* 26 are in conflict." *Fidelity Federal,* 148 F.R.D. at 534. This court

---

**6.** This other litigation is currently before the Hon. Robert B. Kugler, U.S. Magistrate Judge, in the settlement phase. Lesal is not a party to

*FDIC v. Echelon Glen,* although some of the other parties are common to this case—Colonial, EGROA and POLIS.

agrees, and observes that while Congress' intent in Civil Rule 26—as evidenced by the Advisory Committee Notes and the rule on its face—was an acknowledgment that the "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation," *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947), it was equally affirmative in its desire, reflected in Rule of Evidence 408, to observe "the strong public interest in encouraging settlement of private litigation." *Bank of America*, 800 F.2d at 344; Notes of Committee on the Judiciary House Reports No. 93–650 to *Fed.R.Evid.* 408. It is not reasonable to suggest that Congress intended to denigrate one rule through the application of the other rule, therefore the two must somehow find reconciliation.

▪ It is the belief of this court that the most reasonable means of doing this, and one which best effectuates the aims of both rules, is to require a greater, more "particularized showing" that the evidence sought is relevant and calculated to lead to the discovery of admissible evidence. *Fidelity Federal*, 148 F.R.D. at 534. Courts in the Second Circuit have required this more particularized showing. *See, e.g., Morse/Diesel, Inc. v. Trinity Industries*, 142 F.R.D. 80, 84 (S.D.N.Y.1992); *Morse/Diesel, Inc. v. Fidelity and Deposit Co.*, 122 F.R.D. 447, 450 (S.D.N.Y.1988). In *Bottaro v. Hatton Associates*, the Eastern District of New York observed that:

> given the strong public policy of favoring settlements and the congressional intent to further that policy by insulating the bargaining table from unnecessary intrusions, we think the better rule is to require some particularized showing that admissible evidence will be generated by the dissemination of the terms of a settlement agreement.

96 F.R.D. 158, 160 (E.D.N.Y.1982).

Although the Third Circuit has not addressed this, the Eastern District of Pennsylvania, in *Fidelity Federal*, adopted the position of the New York district courts and "place[d] the onus on the plaintiffs to show that the documents relating to the settlement negotiations are relevant and likely to lead to

the discovery of admissible evidence." *Fidelity Federal*, 148 F.R.D. at 534. The effect of this, the court noted, "is to switch the burden of proof from the party in opposition to the discovery to the party seeking the information." *Id.* This is a reasonable position and, as far as it goes, this court is in agreement. But this is not the end of the analysis.

Some measure of balancing of the concerns underlying *Fed.R.Evid.* 408 with those of *Fed.R.Civ.P.* 26 must take place. Even if plaintiff can make a "particularized showing" that the requested documents "are relevant and likely to lead to the discovery of admissible evidence," before permitting discovery of the settlement documents, this court must go further and determine whether and to what extent this discovery will impact elsewhere.[7] This court must balance against plaintiff's asserted interest and need for the documents, the effects that may flow from their discovery.

Here, Lesal has asserted that this discovery is necessary to its proof that, as asserted in ¶¶ 29–30 of its amended second complaint, "Colonial intends to enter into a refinancing or workout concerning the Echelon Glen project ... with the intent to defraud creditors of Colonial, among them, Lesal." Lesal, in its moving papers, provides very little in support of it motion to compel that does not hinge upon the validity of Lesal's assertion that is a creditor of Colonial's. Lesal asserts that defendants' responses to the document requests "are *prima facie* evidence of defendants' fraudulent intent in crafting a workout which destroys Lesal's rights as a creditor." The sense of this assertion eludes this court. The legal positions of the parties in this matter put the defendants, in this court's opinion, on more than a solid footing to assert a good faith belief that Lesal is not entitled to the discovery. Lesal, however, in its recitation of the procedural history of these cases, notes that Judge Brotman ruled against Lesal on its third-party beneficiary claim, but fails to note the variety (and totality) of other claims which were also denied, both in summary judgment and as a consequence of Judge Brotman's trial opinion.

---

**7.** Again, as Congress intended in *Fed.R.Evid.* 408, one interest that must be considered is "the strong interest in encouraging settlement of private litigation."

Lesal then proceeds, in the remainder of its brief to support the relevancy of the discovery requested, all hinged upon its assumption that it has the standing to make the inquiry, that is, that it is a creditor of Colonial's, and that it is in a position to assert that it has a legally-cognizable interest in the transfer of any property that Colonial possesses. The defendants, in their responses to Lesal's discovery requests, have generally objected to the production of settlement-related materials on the grounds of relevancy, attorney work product, attorney-client privilege, and that they are the subject of non-discoverable and inadmissible settlement negotiations.

Although it may appear to be an instance of "putting the cart before the horse," because of the manner in which Lesal's discovery requests are tied to the forthcoming order to show cause, and because of the seriousness of the concerns raised by the defendants of the potentially disastrous effect of an injunction upon the settlement negotiations, the court must at least take a glance ahead at what Lesal will have to demonstrate in that context. The burden upon Lesal will be heavy. Lesal will have to be able to make a "clear showing of immediate irreparable injury," and demonstrate a likelihood of success on the merits of the underlying claims. *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir.), *cert. denied*, 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989); *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797 (3d Cir.1989); *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir.1982) (en banc). Without here determining whether Lesal shall be able to meet its burden when the order to show cause is returnable, it is certain that if it cannot show, as it currently cannot, that it is a creditor of Colonial's, it will be unable to assert harm of any sort, as it will have no interest to protect. Without being a creditor of Colonial's, Lesal cannot be harmed by any action taken with respect to Colonial's property.

■ The dispute, as argued in the moving papers and by the parties at oral argu-

ment, clearly centers about Lesal's status as a creditor. Lesal admits that it is not a "judgment" creditor of Colonial's, but stands firm in its position that it is nonetheless a creditor of Colonial by virtue of the 1990 settlement agreement, allegedly making Colonial liable to indemnify Echotree for its construction debts. In view of Lesal's failure to prevail on the merits upon any of its various assertions of liability against Colonial,[8] including those most directly relevant to any assertion of liability via the 1990 settlement agreement, a consideration of the likelihood of Lesal's standing as a creditor of Colonial's must be made when assessing whether the requested documents "are relevant and likely to lead to the discovery of admissible evidence." If, *arguendo,* Lesal is *not* a creditor, by judgement or otherwise, of Colonial's, then documents relating to the alleged "workout" cannot be relevant to any interest of Lesal's. Although a discovery motion is not the forum for a determination of the merits of Lesal's claim of fraudulent conveyance, nor of Lesal's motion for an injunction against the settlement, given the shifting of the burden to demonstrate relevancy to Lesal, as discussed above, and the policy interests in effectuating settlements, Lesal's prospective ability to assert a claim as a creditor of Colonial's *must* be weighed in the balance.

■ Both in their submissions, and at oral argument, the defendants have asserted, in no uncertain terms, that if Lesal is permitted discovery into these currently ongoing settlement negotiations, any potential deal will "self-destruct." The parties to the negotiations include at least one non-party to both of Lesal's actions, the FDIC. Because of the nature of the "workout" being attempted, this court is extremely concerned that a settlement which may conceivably enure to the benefit of numerous innocent individuals, not be blithely sacrificed to discovery which appears at this time, from the perspective of Lesal's alleged interests, likely to be pointless.[9] In the consideration of Lesal's inabili-

---

8. Discussed in depth above, and in Judge Brotman's March 30, 1993; October 20, 1993; and December 21, 1993 opinions in Civil No. 91–2595.

9. As this court understands the proceedings and the negotiations involved in *FDIC v. Echelon Glen,* Civil No. 92–3886, the objective of the alleged "workout" is to secure a refinancing of the Echelon Glen construction project so that it

ty to make a "particularized showing" that the evidence sought is relevant and calculated to lead to the discovery of admissible evidence, especially when placed in the context of Lesal's unsupported [10] and nebulous assertions that it will be in a position to assert creditor status as to Colonial,[11] this court is unwilling to jeopardize a judicially-supervised settlement process that appears to possess a significant likelihood for benefitting many. The inequity of permitting Lesal's discovery into, and potential destruction of these settlement negotiations, predicated solely upon the unlikely possibility that Lesal *might* be able to prevail as an assignee to the now defunct Echotree's alleged indemnification rights against Colonial under the 1990 settlement agreement, is manifest.

Of final concern to this court is Lesal's procedural posture in this action. Lesal's motion for discovery and its application for an injunction is, as already noted, as to settlement negotiations in a *separate and ongoing* litigation, *FDIC v. Echelon Glen Cooperative, Inc.*, Civil No. 92–3886 (JHR), which is before Magistrate Judge Kugler in pretrial. As noted by defendants at oral argument, and undisputed by Lesal, Lesal has neither intervened nor attempted to intervene in the *FDIC* case, despite its knowledge of the pendency of the case since its filing in 1992. Beyond the problems already discussed herein, this court takes note that the timely intervention of Lesal in the *FDIC* case would have provided Lesal with a much more potentially appropriate forum if it felt it had interests to protect within this context, than the method it has chosen. This is particularly so since the settlement negotiations in question involve parties which are not party to Lesal's instant litigation.

## VII. Conclusions.

Accordingly, and for the reasons discussed in this opinion, Lesal's motion to compel the discovery of materials related to settlement negotiations involving the Echelon Glen property, is denied, and defendant Echelon Glen Resident Owners Association's motion for a protective order is granted.

The accompanying order shall be entered.

### ORDER

This matter having come before the court upon the motion of plaintiff Lesal for an order compelling discovery of materials related to a settlement agreement involving the defendants; and the motion by defendant

---

may be completed. Currently, it appears to the court that 100–110 of the approximately 615 planned units are completed and occupied, although having fallen into disrepair because of the project's financial problems. A successful consummation of the proposed settlement agreement will enable the completion of the unfinished units, place the occupied units back into a state of complete repair and habitability, and secure for these 100–110 families homes which for the past several years, apparently through no fault of their own, have constituted a tenuous existence at best.

10. Again, in the view of the historic failure, in the context of these cases, of Lesal's assertions of liability as against Colonial.

11. As far as this court can determine, the only remaining basis upon which Lesal could conceivably assert liability as to Colonial, which has not already been ultimately foreclose by Judge Brotman's decisions, is by virtue of an assignment of Echotree Associates' alleged contractual rights under the 1990 settlement agreement. Although Lesal talks of this "assignment" of Echotree's indemnification right under the 1990 agreement, the court is unaware as to whether or how such an assignment may have taken place. As previously discussed above, in Part IV's discussion of Count II of Lesal's second action, Judge Brotman indirectly addressed this question, while declining to decide it, in the context of Echotree Associates itself pressing the indemnification issue against Colonial:

[I]t is quite possible that Echotree, were it to litigate the indemnification issue against the RTC as receiver for Colonial, would be unable to enforce the indemnification agreement.... Obligations stemming from the Settlement Agreement may be unenforceable against the RTC under the *D'Oench Dhume* doctrine and ... 12 U.S.C. § 1823.... As noted in this court's October 20, 1993 opinion, Colonial's board of directors never ratified the Settlement Agreement, as is required under § 1823(e)(3).

December 21, 1993 Opinion, at 5 & note 3. Again, although Judge Brotman did not decide the issue, it appears highly probably to this court, from the reasons discussed in this opinion, and from Judge Brotman's analysis in the three *Lesal* opinions, that Echotree Associates would fail in its assertion against Colonial. It is therefore elementary that were Echotree to assign to Lesal any such prospective right to seek indemnification under the settlement agreement from Colonial, Lesal could not prevail where Echotree could not.

Echelon Glen Resident Owners Association for a protective order; and the court having considered the written submissions of the parties; and having considered the oral argument had by the parties on the record on January 5, 1994; and for good cause shown and for the reasons discussed in the accompanying letter opinion;

IT IS this 11th day of January, 1994 hereby

*ORDERED* that the plaintiff's motion for an order compelling discovery of materials related to a settlement agreement is *DENIED;* and

IT IS FURTHER *ORDERED* that defendant Echelon Glen Resident Owners Association's motion for a protective order is *GRANTED,* and said protective order shall be and is hereby *ENTERED.*