Brenda BENNETT, Paul Bennett and Brenda Bennett, ppa Nathaniel Bennett, Plaintiffs,

v.

Louis LA PERE, M.D., Douglas Raynor, M.D., Obstetrical & Gynecological Associates, Inc., and the Westerly Hospital, Defendants.

Civ. A. No. 85–0286–S.

United States District Court, D. Rhode Island.

Sept. 12, 1986.

Mandell, Goodman, Famiglietti & Schwartz, Ltd., Mark S. Mandell, Lisa Dinerman, Providence, R.I., for plaintiffs.

Hanson, Curran & Parks, Kirk Hanson, Dennis J. McCarten, Providence, R.I., for defendant Westerly Hosp.

Higgins, Cavanagh & Cooney, John T. Walsh, Jr., Stephen Lang, Providence, R.I., for all other defendants.

## MEMORANDUM AND ORDER

SELYA, District Judge.

The case before the court raises the interesting—and essentially open—question of whether a nonsettling defendant in a civil action may compel the disclosure of an accord reached between the plaintiffs and (former) codefendants. The parties to the accommodation find the settlement to be more appealing if not shared with the nonsettling defendant—after all, "stolen waters are sweet, and bread eaten in secret is pleasant," Proverbs 9:17—and have refused to reveal the details of their bargain. The tale follows.

### I.

Nathaniel Bennett was born on April 3, 1984 at Westerly Hospital ("Hospital") and was found to be permanently brain-damaged. Nathaniel's injuries were thought by his parents, Paul and Brenda Bennett, to be attributable to negligence on the part of either the obstetrical group which had accepted responsibility for Brenda's care during her pregnancy, or the Hospital, or both. The Bennetts thereupon sued the obstetricians, Drs. Lapere and Raynor, and their professional service corporation, Obstetrical & Gynecological Associates, Inc. (collectively, "Physicians"). They pressed their claims against the Hospital in the same action. The plaintiffs invoked this court's diversity jurisdiction, 28 U.S.C. § 1332, inasmuch as they were citizens of Connecticut, whereas all of the defendants were considered to be Rhode Island citizens for purposes of federal jurisdiction.

After extensive pretrial discovery had taken place, the plaintiffs reached an amicable settlement of all claims against the Physicians, including the latter's pro rata shares of any joint tortfeasor liability. *See* R.I.Gen.Laws §§ 10-6-7, 10-6-8. This settlement was reduced to writing. Nathaniel's court-appointed guardian ad litem recommended approval of the proposed pact. The court held a hearing on August 26, 1986, at which time the settlement was judicially sanctioned and the settlement documents (which had been perused by the court in camera) were placed under seal.

The terms of the settlement purported to leave open the plaintiffs' claims against the Hospital. The plaintiffs and the Physicians jointly moved that the Hospital's lawyer be barred from attending the court hearing on approval of the settlement. The court demurred—in the absence of extraordinary cause, a party to a case is entitled to be represented at any hearing therein—but granted a protective order severely restricting republication or other use of the information gleaned from the hearing. The settlement documents themselves were not given to, or read by, the nonsettling defendant's attorney. Thus, the Hospital has direct knowledge of the broad parameters of the accommodation between the plaintiffs and the Physicians, but not of the fine details.

This superficial understanding of the settlement is, in the Hospital's view, too little and too imprecise. Believing itself entitled to examine all of the paperwork, the Hospital presses a motion under Fed.R.Civ.P. 37(a) for production and disclosure of the entire package of settlement documents, its earlier demand for the same, Fed.R.Civ.P. 34, having been given short shrift by the Bennetts and by the settling codefendants. The Hospital acknowledges that, if its Rule 37 motion succeeds, production should be effected under much the same protective

138

order which governed the Hospital's aural receipt of the information which surfaced at the August 26 confirmation hearing. The plaintiffs object to the motion. They point to secrecy agreements contained in the settlement documents themselves, to what they see as the lack of any particularized need or legitimate purpose supporting the Hospital's request, and to the inhibitory effects which such an order may have on the negotiation of future settlements.

## II.

■ The scope of discovery is governed generally by Fed.R.Civ.P. 26(b), which reads in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party.... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

It is well established that the range of discovery under this provision is extremely broad. *See* Advisory Committee Notes to Rule 26, 1946 Amendment ("Of course, matters entirely without bearing as direct evidence or as leads to evidence are not within the scope of inquiry, but to the extent that the examination develops useful information, it functions successfully as an instrument of discovery, even if it produces no testimony directly admissible.") If one thing is certain, it is this: by its terms, Rule 26(b) does not condition the availability of discovery upon the likely admissibility of the information sought. If there is some legitimate relevance to the requested information and if no cognizable privilege attaches, it ought to be discoverable—at least in the absence of some countervailing consideration, *e.g.*, that production would be disproportionately onerous or burdensome, that unfair prejudice would result, or the like.

In federal litigation, relevance has come to be an elastic concept. *See United States v. Tierney*, 760 F.2d 382, 387–88 (1st Cir.1985). Particularly in the precincts of pretrial discovery, the concept is broadly and liberally interpreted. *See Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451 (1947). As the Court has noted, "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Id.* To that end, Rule 26(b) permits a party to inquire into anything "relevant" to the subject matter of the litigation.

■ Certainly, the terms and dimensions of the arrangements between the plaintiffs and the settling codefendants seem relevant to the surviving litigation in several respects. First, under the Rhode Island version of the Uniform Contribution Among Joint Tortfeasors Act, R.I.Gen. Laws § 10–6–1 *et seq.*, which will control in this diversity case under the familiar doctrine of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), the damages which the plaintiffs can collect from the Hospital if they successfully prosecute what remains of the case will depend to some extent on the terms, amount, and value of the Physicians' settlement. *See* R.I.Gen.Laws § 10–6–7 ("A release by the injured person of one (1) joint tortfeasor ... does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid."). And, given that the bargain struck between the plaintiffs and the Physicians is not a sum certain payment but is intricately cast as a structured settlement, the degree of any offset to which the Hospital is entitled may be somewhat obscure without revelation of the transaction in all its splendor.

Second, there may be room to argue that the termination of the case against the Physicians has been so crafted as to insu-

late the Hospital from liability, that is, in the statutory phrase, *see id.*, that "the release so provides." *Cf. McInnis v. Harley-Davidson Motor Co., Inc.*, 625 F.Supp. 943 (D.R.I.1986) (discussing circumstances wherein, under Rhode Island law, general release may serve to discharge unidentified joint tortfeasors). There is no way to tell without inspecting the paperwork. Third, the shape and form of the partial settlement may illumine the viability (or strategic wisdom) of an attempt by the Hospital to rejoin the Physicians as third-party defendants. *See* Fed.R.Civ.P. 14(a).

Then, too, the putative relevance of the settlement portfolio is not limited strictly to concerns anent damages and/or possible third-party practice. Although the Hospital frankly concedes that Rule 408 of the Federal Rules of Evidence [1] prohibits the admission at trial of evidence about the Physicians' settlement as matters now stand, *see McInnis v. A.M.F., Inc.*, 765 F.2d 240, 246–50 (1st Cir.1985), that barrier is not necessarily an insurmountable one. By its express language, the rule negates the use of such information "to prove liability for or invalidity of the claim or its amount." Fed.R.Evid. 408. But, it holds out the prospect of admissibility "when the evidence is offered for another purpose, such as proving bias or prejudice of a witness ..." *Id.* There is, of course, no satisfactory way for the Hospital to determine whether it can slip within the integument of the Rule 408 exception unless it gains discovery access to the settlement documents.

At bottom, the Bennetts' plea that the settlement documentation is wholly immaterial represents the triumph of hope over reason. Indeed, the grounds they assert for a protective order presume a conclusion

that can only be fairly reached, in our adversary system, through disclosure. In the context of the "liberal view of the standards of relevance applicable in discovery proceedings," *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 561 (S.D.N.Y.1977), the evulgation which the Hospital seeks to compel passes initial scrutiny on relevancy grounds.

### III.

■ Having concluded that the settlement materials are relevant in the discovery sense, the court turns to a consideration of the existence vel non of any considerations which might militate against disclosure. At the outset, the court flatly rejects the plaintiffs' contention, drawn from *Bottaro v. Hatton Associates*, 96 F.R.D. 158 (E.D.N.Y.1982), that the movant has the burden of making "some particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of a settlement agreement." *Id.* at 160. With respect, and recognizing that *Bottaro* appears to be the single published decision most closely in point, the balance which *Bottaro* suggests seems out of kilter with the spirit and philosophy of the Federal Rules.

This court does not lightly disregard reported precedent. Nevertheless, the underpinnings of *Bottaro* simply will not support the weight of its reasoning. This is so for at least two reasons. In the first place, *Bottaro* placed heavy reliance on Fed.R.Evid. 408, quoted *ante* n. 1, as indicative of a congressional intent to "insulat[e] the bargaining table from unnecessary intrusions...." 96 F.R.D. at 160. But, that Rule addresses the *admissibility* of compromise negotiations and the like into evi-

1. The text of Fed.R.Evid. 408 is as follows:
   Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is

likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

dence; the Rule cannot be read so broadly as to bar discovery in the same sweeping fashion.

In the second place, *Bottaro* misconceives the public policy considerations which underlie Rule 408. Parties will be discouraged from making offers in compromise if such offers can unimpededly creep into evidence at trial; so Rule 408 creates a prophylaxis to guard against this foreseeable evil. Parties can now freely make settlement proposals, knowing that if they are spurned the propositions will not come back to haunt them before a jury. But, the climate changes when a settlement is achieved. The fears which might inhibit the making of offers in the absence of Rule 408 do not apply in such circumstances. No discouragement attends discoverability anent completed compromises. From the point of view of the settling parties, the deal is done.

To suggest, as do these plaintiffs, that the prospect of revealing settlement terms to a narrowly limited audience (nonsettling codefendants and those in privity with them) might impede out of court dispositions seems wrongheaded, given that the alternative to settlement would be a double whammy: the loss of the benefit of the bargain and the more public airing occasioned by a fullblown trial. Moreover, to the extent that some conceivable disincentive to settlement could be conjured up from the availability of disclosure, that drawback is substantially outweighed by the assistance which full divulgence of the terms of relevant settlements among all parties will likely afford in the negotiation process. And if any doubt lingers, the fundamental fairness of assuring that the plaintiffs and the remaining defendant will approach the bargaining table armed with the same knowledge of the earlier (completed) settlement surely tips the scales.

Pretrial discovery was meant to end the sporting theory of justice. Its purpose was—and remains—to allow a wide search for facts which may aid a party in the attempt to ready the prosecution or defense of a claim. Once it is determined that material sought by discovery is relevant and not privileged, the discoverer has crossed the modest threshhold which Rule 26(b) erects. From that point forward, the party opposing discovery should have the burden of establishing some good cause or sound reason for blocking disclosure. The *Bottaro* court, therefore, placed the shoe on precisely the wrong foot.

When the burden is properly allocated, it becomes readily evident that the plaintiffs have offered no good cause or sound reason sufficient to defeat discovery. To be sure, the settlement documents contain a boilerplate paragraph, routine in medical malpractice cases, which calls for confidentiality of the accord and the related agreements—yet litigants cannot so easily collogue to screen themselves from the rigors of pretrial discovery. The Hospital's rights cannot be artificially shrunk to suit the convenience of its adversaries. Whatever suppressive effect the confidentiality clause may have as between the Bennetts and the Physicians, it cannot be allowed to bar the nonsettling defendant's right to inquire into the settlement. *Accord Magnaleasing, Inc. v. Staten Island Mall,* 76 F.R.D. at 562.

The other lamentations advanced by the plaintiffs are equally halt. Plaintiffs claim that they will be "prejudiced" in their dealings with the Hospital, but they fail to explain how or why. The court, after oral argument by distinguished counsel, is left with the distinct impression that the only "prejudice" which disclosure will work vis-a-vis the plaintiffs is to rob them of the (unfair) tactical advantage which would attach to keeping the Hospital uninformed. "Good cause" in the current context requires more than oneupsmanship gone awry.

## IV.

Inasmuch as (i) the documents sought are relevant and not privileged, and (ii) the plaintiffs have totally failed to show any sound reason why production should be withheld, the arguments in favor of the motion for discovery appear formidable.

Moreover, a broader view of the overall problem reveals policy imperatives that further militate in favor of disclosure. The fundamental purpose of the Federal Rules is "to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. To this end, the Rules were specifically amended in 1966 to provide that certain types of generally *inadmissible* information, namely liability insurance policies, *see* Fed.R.Civ.P. 26(b)(2), would thenceforth be discoverable. The Advisory Committee Notes to the 1966 Amendment stated the reason for extending discovery to encompass such materials:

> Disclosure of insurance coverage will enable counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation. It will conduce to settlement and avoid protracted litigation in some cases, though in others it may have an opposite effect.

Much the same can be said of the Hospital's effort to force the plaintiffs to reveal the details of their arrangements with the Physicians.[2] The Hospital is faced with a substantial damages suit and the court is confronted with the prospect of a lengthy and involved trial. To the extent that the Hospital's ability realistically to evaluate the plaintiffs' case against it depends upon an awareness of the terms and conditions of the settlement with the codefendants— and it plainly depends on that information to a meaningful degree—the remaining defendant should not be left to grope blindly in the dark. So long as the policy of the Rules is the promotion of the "just, speedy, and inexpensive" resolution of cases, then fair settlements must always be encouraged. Fairness cannot be achieved when one side is needlessly blindfolded.

## V.

For these reasons, the Hospital's motion to disclose is granted. The plaintiffs shall produce true and complete copies of the settlement documentation by delivery of the same to the Hospital's counsel within seventy-two hours from the date of this rescript. The defendant's receipt of the documents produced shall be subject in all respects to the protective order entered by the court at the August 26, 1986 hearing.[3]

*So ordered.*

---

**2.** Unlike insurance agreements, the Rules make no special provision for the disclosure of settlement agreements. But, that is no obstacle to ordering their production when circumstances warrant. After all, before Rule 26(b)(2) was fashioned by the 1966 amendments, some courts had nevertheless felt free to order the disclosure of such data. *E.g., Cook v. Welty,* 253 F.Supp. 875, 878 (D.D.C.1966); *Johanek v. Aberle,* 27 F.R.D. 272, 280 (D.Mont.1961). *Contra Bisserier v. Manning,* 207 F.Supp. 476, 480 (D.N.J.1962); *Cooper v. Stender,* 30 F.R.D. 389, 393–94 (E.D.Tenn.1962).

**3.** Nothing contained herein shall alter the order in limine previously entered, which prohibits reference to the settlement or the documentation surrounding the same at any trial of this cause. If, upon examination of the materials received in pursuance hereof, the Hospital believes that any matter germane to the settlement should be admitted into evidence at the trial, the Hospital shall, outside of the presence of the jury, seek an appropriate modification order.