MORSE/DIESEL, INC., a Delaware corporation, Plaintiff,

v.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland corporation, Defendant and Third–Party Plaintiff,

v.

T. FREDERICK JACKSON, INC., Third–Party Defendant.

No. 86 Civ. 1494 (PKL).

United States District Court, S.D. New York.

Nov. 21, 1988.

---

Peter N. Wang, Friedman, Wang & Bleiberg, P.C., New York City, for plaintiff.

Howard S. Veisz, Kornstein Veisz & Wexler, New York City, for third-party defendant.

## ORDER

LEISURE, District Judge:

### FACTUAL BACKGROUND

This action arises out of the construction of the Marriott Marquis hotel located at Times Square in New York City. Plaintiff Morse/Diesel Inc. ("Morse/Diesel") was the general contractor on the project. Morse/Diesel hired third-party defendant, T. Frederick Jackson, Inc. ("Jackson"), as an electrical subcontractor. In this action, Morse/Diesel is seeking to recover from Jackson's surety, defendant and third-party plaintiff Fidelity and Deposit Company of Maryland, money it paid in excess of Jackson's modified subcontract.[1] Third–Party Complaint ¶¶ 1–3. Jackson is counterclaiming for increased remuneration based on excess work performed, and for damages incurred due to the inability to accept other projects when completion of the Marriott Marquis project was delayed. Answer to Third–Party Complaint and Counterclaim Against Morse/Diesel, Inc. ¶¶ 31, 36 and 47.

Jackson served a series of subpoenas on Morse/Diesel for production of documents which Morse/Diesel withheld; plaintiff decided to withhold those documents pursuant to Fed.R.Evid. 408, which is more particularly described below. Plaintiff's Objection to Magistrate's Order to Produce Documents ("Plaintiff's Objection") ¶ 1. Upon continued noncompliance with the subpoenas, Jackson moved to compel production of the withheld documents. The parties appeared before Honorable Naomi Reice Buchwald, United States Magistrate of this Court, on several occasions in order to try to resolve the conflict, and on May 18, 1988, Magistrate Buchwald orally granted Jackson's motion to compel production of the aforementioned documents. *Id.* ¶¶ 2–5.

### JACKSON'S MOTION TO COMPEL

Fed.R.Evid. 408 states in relevant part:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.... This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotia-

---

1. As of February 4, 1986, Morse/Diesel had paid $29,464,844.47 to Jackson, but the subcontract was modified on the same day to $23,186,-142.30. Morse/Diesel, in the underlying suit, is requesting reimbursement of the difference of $6,278,702.17 plus $960,657.00 in deposits for a total of $7,239,359.17. Complaint ¶¶ 8–9.

tions. This rule also does not require exclusion when the evidence is offered for another purpose....

The purpose behind the rule is "promotion of the public policy favoring the compromise and settlement of disputes." Fed.R. Evid. 408 advisory committee's note. By prohibiting such evidence from being admitted, settling parties are assured of the secrecy of their negotiations. *Id.*

■ This rule, however, only applies to the admissibility of evidence at trial and does not necessarily protect such evidence from discovery. As Judge Weinstein stated:

> The policy of allowing open and free negotiations between parties by excluding conduct or statements made during the course of these discussions is not intended to conflict with the liberal rules of discovery embodied in the Federal Rules of Civil Procedure.... Therefore, a party is not allowed to use Rule 408 as a screen for curtailing his adversary's rights of discovery.

2 J. Weinstein & M. Berger, *Evidence* ¶ 408[1] at 408–15 to 408–16 (1986). This view has been uniformly adopted by the courts in dealing with the provision. *See, e.g., Center for Auto Safety v. Department of Justice*, 576 F.Supp. 739, 749 n. 23 (D.D.C.1983). In that case, the court stated:

> While [Rule 408's] intent is to foster settlement negotiations, the sole means chosen to effectuate that end is a limitation on their admission ... for the purpose of proving liability at trial, *not the application of a broad discovery privilege.* Otherwise, parties would be unable to discover compromise offers which could be offered for a relevant purpose.

*Id.* (emphasis added); *see also NAACP Legal Defense Fund v. Department of Justice*, 612 F.Supp. 1143, 1146 (D.D.C.1985) (Rule 408 "was never intended to be a broad discovery privilege.").

The rule governing discovery is thus applicable to discovery of compromise negotiations, in the same manner as in any other discovery situation. Rule 26(b) states:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will by inadmissible at the trial *if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.*

Fed.R.Civ.P. 26(b)(1) (emphasis added). The history of the rule demonstrates that it provides for a "broad scope of examination and ... it may cover not only evidence for use at the trial but also inquiry into matters in themselves inadmissible as evidence but which will lead to the discovery of such evidence." Fed.R.Civ.P. 26(b)(1) advisory committee's note; *see Bennett v. La Pere*, 112 F.R.D. 136, 138 (D.R.I.1986).

■ This Court has interpreted "reasonably calculated" as meaning " '*any possibility* that the information sought may be relevant to the subject matter of the action.' " *Mallinckrodt Chemical Works v. Goldman, Sachs*, 58 F.R.D. 348, 353 (S.D. N.Y.1973) (emphasis in original) (*quoting* C. Wright, Law of Federal Courts § 81, at 359 n. 47 (2 ed. 1970)). In *Mallinckrodt*, plaintiffs sued Dun & Bradstreet, among others, for securities fraud on the ground that commercial paper sold to plaintiffs was rated as "prime," and the legitimacy of such a rating was dubious. 58 F.R.D. at 350. The plaintiffs sought discovery of all documents which Dun & Bradstreet submitted to the SEC regarding the financial status of the company which issued the commercial paper. The Court permitted discovery of all the requested documents, noting the liberal scope of discovery allowed under the Federal Rules and the lack of any allegations by the defendant of undue burden. The Court then acknowledged that the documents submitted to the SEC

could provide significant insight into the alleged fraud.[2] *Id.* at 354.

There are cases which specifically discuss the interaction of Fed.R.Civ.P. 26(b)(1) and Fed.R.Evid. 408. In *Bottaro v. Hatton Associates,* 96 F.R.D. 158 (E.D.N.Y.1982), a plaintiff sued several defendants for alleged federal and state securities law violations, and one defendant settled with the plaintiff during the pre-trial period. As part of the settlement, the parties agreed to not disclose the terms of their agreement. *Id.* at 159. The remaining defendants moved to compel discovery of the terms of the agreement, arguing that although the terms of the agreement were inadmissible as evidence under Fed.R.Evid. 408, they were discoverable as possibly producing "admissible evidence on the question of damages." *Id.*

The *Bottaro* court denied the motion on the ground that the defendant failed to show that the terms of the settlement "appear[ed] to be reasonably calculated to lead to discovery of admissible evidence." *Id.* at 160. In doing so, the court stated that discovery of settlement negotiations should "require some particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of a settlement agreement." *Id.*

*Bennett v. La Pere,* 112 F.R.D. 136 (D.R. I.1986), involved the same Fed.R.Civ.P. 26(b)(1) and Fed.R.Evid. 408 concerns as *Bottaro, supra.* *Bennett* was a negligence action against physicians and a hospital for malpractice in the delivery of a brain-damaged child. The child's parents settled with the physicians, and the hospital moved for production of the settlement documents and all underlying paperwork. *Id.* at 137. The parents opposed the motion based on Fed.R.Evid. 408 and argued that disclosure in such situations would inhibit parties from reaching out of court settlements. *Id.* at 140.

The court stated that the range of discovery under Rule 26(b) is intended to be very broad, and that as long as "there is some legitimate relevance to the requested information ..., it ought to be discoverable." *Id.* at 138. It also went to great lengths to reject *Bottaro* as being "out of kilter with the spirit and philosophy of the Federal Rules." *Id.* at 139. The *Bennett* court further noted the *Bottaro* court's heavy reliance on Fed.R.Evid. 408, which deals with admissibility of evidence, and not discovery. Such an emphasis was said to "misconceive[]" the policy considerations of Fed.Rule 408. That rule protects against discouraging compromise offers. Once a settlement is achieved, however, the situation changes, and there is no need to fear that an offer will not be made.[3] *Id.* at 139–40. Based on the above analysis, the court granted the motion to compel discovery. *Id.* at 141.

■ *Bottaro* and *Bennett* provide conflicting views as to the showing needed to compel discovery of settlement-related materials. Even under the more restrictive view of *Bottaro,* however, Jackson has made the requisite particularized showing.[4] Morse/Diesel claims that, although Magistrate Buchwald expressly adopted *Bottaro* at the time of her oral ruling, she misapplied it. Morse/Diesel's Memorandum of Law in Support of its Objections to Magistrate's Rulings at 5. The Magistrate conducted an extensive *in camera* review of the documents and stated that "[i]t seems to me that [there is] the likelihood of there being relevant information within these documents." May 18, 1988 transcript at p. 83, attached as Exhibit A to Jackson's Memorandum in Opposition to

---

**2.** As Morse/Diesel asserts no claim that the discovery will be unduly burdensome, the Court does not consider burden as a factor.

**3.** It also should be noted that Fed.R.Civ.P. 1 states that the fundamental purpose of the Federal Rules is to ensure that every action is determined speedily and inexpensively. In that regard, disclosure will enable all parties to an action to evaluate realistically the other sides'

positions and not to "be left to grope blindly in the dark." This will also lead parties to settle if they perceive the other side to have a strong case. *Bennett,* 112 F.R.D. at 141.

**4.** Since this Court finds that Jackson has made the requisite showing under *Bottaro,* there is no need to reach the issue of whether a mere showing of relevance under *Bennett* is sufficient.

Morse/Diesel's Objections to Magistrate's Rulings ("Jackson's Memorandum in Opposition").

Before reviewing the adequacy of Jackson's showings, it is necessary to define "particularized showing" under *Bottaro*. On this subject, the *Bottaro* court merely stated "we think the better rule is to require some particularized showing...." 96 F.R.D. at 160. While there do not appear to be other cases in this context which illuminate the scope of such a showing, other situations where a party is required to make a "particularized" showing provide guidance. Under Fed.R.Civ.P. 9(b), for example, a party is required to plead fraud with "particularity". It has been held that in order to plead fraud under New York law, a claimant can only satisfy Rule 9(b) by specifically pleading the requisite mental state required to find fraud. *Atlanta Shipping Corp., Inc. v. Chemical Bank*, 818 F.2d 240, 251 (2d Cir.1987); *see also, Phillips v. Sherman*, 197 F.Supp. 866, 868 (N.D.N.Y.1961) ("particular facts listed to support [the] charge" required under Rule 9(b)). *See also, Cresswell v. Sullivan & Cromwell*, 1987 WL 27676 (S.D.N.Y. December 9, 1987) (Under Fed.R.Civ.P. 26(c), a motion for a confidentiality order will only be granted if the moving party makes a particularized showing through "actual facts" that disclosure of the confidential information would seriously injure his business.).

It appears from the above discussion that Jackson is required to make a particularized showing, to the effect that the settlement documents are reasonably calculated to lead to the discovery of admissible evidence. Jackson has clearly made such a showing. In its original memorandum to Magistrate Buchwald, Jackson lists various letters and excerpts of testimony from Morse/Diesel which either directly cite increases in construction costs, or indicate other sources of such information. Memorandum of Law in Support of T. Frederick Jackson's Motion to Compel Production of Documents and Other Discovery ("Jackson's Initial Memorandum") at 6–13. In a letter to Magistrate Buchwald, dated February 29, 1988, Jackson analyzes various affidavits submitted by Morse/Diesel with regard to the withheld documents and specifically cites references in these documents to increased costs. In this analysis, Jackson states "[i]t could not be more clear that these documents set forth facts that go to the heart of Jackson's claims for increased compensation." February 29, 1988 letter at 1–2. This Court agrees with that assessment.

Jackson has documented specific instances where the withheld material would show increases in its construction costs. In doing so, it has made factual allegations sufficient to satisfy the particularized showing test. These particularized showings demonstrate that the withheld material can reasonably be construed as leading to admissible evidence on the issue of damages caused by the construction delays. Therefore, third-party defendant and counterclaimant Jackson's motion was correctly granted by Magistrate Buchwald. Accordingly, this Court adopts Magistrate Buchwald's May 18, 1988 oral ruling in its entirety.

SO ORDERED.