June 27, 2023

**Supreme Court**

No. 2022-22-M.P.
(PC 16-4767)

(Dissent begins on Page 21)

Patricia Noonan, individually and in   :
her capacity as Executrix of and on
behalf of the beneficiaries of the
Estate of William J. Noonan, et al.

v.                   :

Sundersansan Sambandam, M.D.    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Patricia Noonan, individually and in : 
her capacity as Executrix of and on
behalf of the beneficiaries of the
Estate of William J. Noonan, et al.

v.                               :

Sundersansan Sambandam, M.D.      :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on May 17, 2023, pursuant to a writ of certiorari issued upon petition by the plaintiffs, Patricia Noonan, individually and in her capacity as Executrix of and on behalf of the beneficiaries of the Estate of William J. Noonan, Linda Byrne, Terri Pare, Karen LeCam, and Steven Noonan (plaintiffs).  The plaintiffs seek review of an order of the Superior Court granting the motion of the defendant, Sundaresan T. Sambandam, M.D. (defendant),[1] to compel production of a complete, unredacted

---

[1] We pause to note that there is an inconsistency in the record regarding the spelling of the defendant's first name.

- 1 -

copy of the settlement agreement between the plaintiffs and the former codefendants who settled plaintiffs' claims. The plaintiffs assert that the trial justice abused her discretion in granting the motion because the amount paid in accordance with the settlement agreement is not discoverable pursuant to Rule 26(b)(1) of the Superior Court Rules of Civil Procedure. The parties were directed to appear and show cause why the issues raised in this case should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons stated herein, we quash the decision of the Superior Court.

**Facts and Travel**

This is a medical malpractice case arising out of treatment provided to William Noonan by defendants, Rhode Island Hospital, Barry Sharaf, M.D., Philip Stockwell, M.D., Nazia Khan, M.D., Peter B. Rintels, M.D. (collectively referred to as the settling codefendants), and Dr. Sambandam. Mr. Noonan was a patient at Rhode Island Hospital in June 2015; he received treatment for aplastic anemia, a blood disorder. While at the hospital, after receiving anticoagulant medication, Mr. Noonan suffered an intracranial hemorrhage and died.

Mr. Noonan's wife, Patricia Noonan, was appointed to serve as the executrix of his estate. On October 12, 2016, Mrs. Noonan initiated the instant action by filing

a complaint in the Superior Court. The operative complaint, the second amended complaint, sets forth thirteen counts: negligence against each defendant (counts one through six), lack of informed consent against each defendant (counts seven through twelve), and one count of loss of consortium, companionship, and society (count thirteen). Each defendant filed an answer and discovery ensued.

The plaintiffs then settled their claims with all defendants except for Dr. Sambandam; stipulations dismissing plaintiffs' claims against the settling codefendants entered on March 26, 2020. Doctor Sambandam, the sole remaining defendant, filed a supplemental request for production of documents in which he sought a "complete copy of any and all documents and related materials regarding plaintiffs' settlement of claims with any and all co-defendants. This includes a complete copy of any release and dismissal stipulation." The defendant did not reference Rule 26 in his production request. The plaintiffs objected to the extent that the request sought "the settlement amount," asserting that the amount was "not reasonably calculated to lead to the discovery of admissible evidence * * *." Notwithstanding this objection, plaintiffs attached a redacted copy of the settlement agreement, excluding only the settlement amount.

The defendant then filed a motion to compel "the complete, unredacted [r]elease/settlement agreement regarding the settlement of [p]laintiffs' claims with the former co-defendants." Although defendant did not specifically reference Rule

26, he asserted that the "requested information [was] necessary to and discoverable by [him] pursuant to Rhode Island and federal law." He argued that he "must know the amount which will be set off from any potential recovery by [p]laintiffs against [him]" pursuant to G.L. 1956 § 10-6-7 of the Uniform Contribution Among Tortfeasors Act. The defendant asserted that "the amount of consideration paid by the settling co-defendants is critical for an evaluation of potential damages prior to trial." The plaintiffs objected and argued that the amount of the settlement was not discoverable because it was not likely to lead to the discovery of admissible evidence.

A hearing was held on November 4, 2021, during which plaintiffs argued that "the agreement amount is irrelevant to the determination of liability and, therefore, it's not discoverable documentation at this point." The plaintiffs further argued that the amount provided for in the settlement agreement was "not going to lead to the discovery of admissible evidence which is the standard." The trial justice concluded that the settlement amount was discoverable and explained that "there's no basis whatsoever for refusing to give the settlement agreement." The trial justice opined that plaintiffs were "confusing admissibility with discoverability. It's very clear that it's discoverable. It's not admissible." Accordingly, the trial justice granted defendant's motion to compel. An order reflecting this decision entered thereafter, instructing plaintiffs to produce "a complete, unredacted copy of any and all

- 4 -

settlement agreements/releases" between plaintiffs and the settling codefendants.

On December 2, 2021, defendant moved for a conditional order of dismissal due to plaintiffs' failure to comply with the order. The plaintiffs objected and a hearing was held on December 16, 2021, after which a different justice of the Superior Court granted the motion. A conditional order of dismissal entered on December 29, 2021. This petition for a writ of certiorari followed.

**Standard of Review**

"It is well settled that this Court limits its review on certiorari 'to examining the record to determine if an error of law has been committed.'" *Nickerson v. Reitsma*, 853 A.2d 1202, 1205 (R.I. 2004) (quoting *City of Providence v. S & J 351, Inc.*, 693 A.2d 665, 667 (R.I. 1997)). "We do not weigh the evidence on certiorari, but only conduct our review to examine questions of law raised in the petition." *Malachowski v. State*, 877 A.2d 649, 653 (R.I. 2005) (quoting *Jeff Anthony Properties v. Zoning Board of Review of North Providence*, 853 A.2d 1226, 1229 (R.I. 2004)).

"[W]ith respect to determining the scope of Rule 26, we have repeatedly employed a *de novo* standard of review." *DeCurtis v. Visconti, Boren & Campbell, Ltd.*, 152 A.3d 413, 421 (R.I. 2017) (quoting *Cashman Equipment Corp., Inc. v. Cardi Corp., Inc.*, 139 A.3d 379, 381 (R.I. 2016)). "However, '[i]n granting or denying discovery motions, a Superior Court justice has broad discretion,' which

'this Court will not disturb * * * save for an abuse of that discretion.'" *State v. Lead Industries Association, Inc.*, 64 A.3d 1183, 1191 (R.I. 2013) (quoting *Colvin v. Lekas*, 731 A.2d 718, 720 (R.I. 1999)).

**Analysis**

The sole issue in this case is whether a nonsettling defendant may compel the disclosure of the amount of a settlement agreement reached between plaintiffs and the settling codefendants—an issue not yet addressed by this Court.[2]

The plaintiffs claim that the amount set forth in the settlement agreement is not discoverable pursuant to Rule 26(b)(1) and therefore the trial justice abused her discretion in granting defendant's motion to compel plaintiffs to produce a complete, unredacted copy of the agreement. The plaintiffs assert that the amount set forth in the agreement is not discoverable because it is not admissible evidence at trial in

---

[2] The United States Supreme Court also has not addressed this issue and there exists a split of viewpoint among jurisdictions that have reached it. *Compare Blount v. Major*, No. 4:15 CV 322 DDN, 2016 WL 6441597, at \*3 (E.D. Mo. Nov. 1, 2016) (holding that certain portions of a settlement agreement, including amounts paid, were discoverable), *Gaedeke Holdings VII, Ltd. v. Mills*, No. CIV-11-649-M, 2015 WL 3440222, at \*2 (W.D. Okla. May 27, 2015), *Tanner v. Johnston*, No. 2:11-CV-00028-TS-DBP, 2013 WL 121158, at \*5 (D. Utah Jan. 8, 2013), *Carl E. Woodward, LLC v. Travelers Indemnity Company of Connecticut*, No. 1:09CV781-LG-RHW, 2011 WL 13127845, at \*1 (S.D. Miss. Jan. 19, 2011), *and Bennett v. La Pere*, 112 F.R.D. 136, 141 (D.R.I. 1986), *with Moi v. Chihuly Studio, Inc.*, 846 F. App'x 497, 500 (9th Cir. 2021) (affirming a district court's decision to preclude discovery of a settlement agreement), *Doe v. Methacton School District*, 164 F.R.D. 175, 176-77 (E.D. Pa. 1995), *Lesal Interiors, Inc. v. Resolution Trust Corporation*, 153 F.R.D. 552, 564 (D.N.J. 1994), *Kalinauskas v. Wong*, 151 F.R.D. 363, 367 (D. Nev. 1993), *and Bottaro v. Hatton Associates*, 96 F.R.D. 158, 159-60 (E.D.N.Y. 1982).

accordance with Rule 408 of the Rhode Island Rules of Evidence, nor is it "reasonably calculated to lead to the discovery of admissible evidence * * *." According to plaintiffs, "[t]he settlement amount sought has no relevancy in determining whether [defendant] is liable to [plaintiffs]. The information sought is not relevant until after a damages verdict is rendered in [plaintiffs'] favor *and* a factfinder determines [defendant] is a joint tortfeasor with the settling defendants." We agree with plaintiffs.

At the outset, we pause to note that, in granting defendant's motion to compel production of the settlement amount, the trial justice provided no reasoning as to her decision. This was error. *See Fisher v. Lau*, 291 A.3d 1261, 1262 (R.I. 2023) (mem.) (explaining that "[t]he trial justice's decision [was] devoid of any meaningful analysis" and, as a result, "our examination of the record and decision [was] hampered by this vacuum"); *see also State v. Gibson*, 291 A.3d 525, 544 (R.I. 2023) ("In providing a rationale for a decision, however, the trial justice need not refer to all the evidence supporting the decision but need only cite evidence sufficient to allow this Court to discern whether the justice has applied the appropriate standards.") (quoting *State v. Franco*, 225 A.3d 623, 631 (R.I. 2020)); *Fitzpatrick v. Pare*, 552 A.2d 1185, 1186 (R.I. 1989) (holding that the Court was "unable to reach the merits of the petitioner's contentions" because the "District Court's decision * * * [was] devoid of any supportive reasoning[,]" therefore "making intelligent

appellate review impossible" and requiring remand to the District Court with direction for the trial judge to "create a record and state the factual and legal determinations supportive of his decision"). We nonetheless address plaintiffs' claim because we are presented solely with a question of law, which we review *de novo*. *See DeCurtis*, 152 A.3d at 421.

"The provisions of the Superior Court Rules of Civil Procedure pertaining to discovery generally are liberal, and are designed to promote broad discovery among parties during the pretrial phase of litigation." *DeCurtis*, 152 A.3d at 420 (quoting *Henderson v. Newport County Regional Young Men's Christian Association*, 966 A.2d 1242, 1246 (R.I. 2009)). "The philosophy underlying modern discovery is that prior to trial, all data relevant to the pending controversy should be disclosed unless the data is privileged." *Id.* at 421 (quoting *Cabral v. Arruda*, 556 A.2d 47, 48 (R.I. 1989)).

The scope and limits of pretrial discovery are clearly set forth in Rule 26(b)(1), which provides, in pertinent part:

> "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any documents, electronically stored information, or tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for

objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

Thus, if the information sought is inadmissible at trial, "Rule 26(b)(1) requires * * * that the materials sought be 'reasonably calculated to lead to the discovery of admissible evidence.'" *DeCurtis*, 152 A.3d at 420 (emphasis omitted); *see also Nye v. Town of Westerly*, 668 A.2d 1267, 1268 (R.I. 1995) (mem.) (explaining that items sought in discovery production request were not discoverable because they were "not relevant evidence nor [were] they 'reasonably calculated to lead to the discovery of admissible evidence'") (quoting Super. R. Civ. P. 26(b)(1)).

In the case at hand, the settlement agreement and amount therein is flatly inadmissible at trial to prove plaintiffs' claims, pursuant to Rule 408 of the Rhode Island Rules of Evidence. Rule 408 provides in part:

> "Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct

a criminal investigation or prosecution."

In other words, "Rhode Island law recognizes that offers to compromise and evidence of settlement negotiations generally are not admissible into evidence." *Votolato v. Merandi*, 747 A.2d 455, 461 (R.I. 2000). This Court has opined that "unless evidence of a settlement is relevant to some issue, other than the quantum of damages, a trial justice is instructed to bar the admission of such evidence and subsequently to make the appropriate reduction in any jury award rendered in favor of the plaintiff." *Id.* at 462. We have adopted this rule of law because the "[e]xclusion of such evidence facilitates an atmosphere of compromise among the parties and promotes alternatives to litigation." *Id.* at 461. "Further, it is well settled that such evidentiary protection extends to settlements reached between plaintiffs and third party tortfeasors." *Id.*

The defendant does not contend that the settlement amount would be admissible at trial.[3] Accordingly, it must be "reasonably calculated to lead to the discovery of admissible evidence." *DeCurtis*, 152 A.3d at 420 (emphasis omitted).

The defendant argues that he "must be apprised of the amount which may be set off from any potential recovery" by plaintiffs against him. We are not persuaded.

---

[3] To the extent defendant argues generally that "information contained in settlement agreements is relevant and admissible at trial to prove bias or prejudice of a witness," we emphasize that plaintiffs produced a copy of the settlement agreement with only the settlement amount redacted.

Section 10-6-7(1) of the Uniform Contribution Among Tortfeasors Act provides that "[a] release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release."[4] We have explained that "[t]raditionally, in this jurisdiction, in cases where a plaintiff already has recovered against a third party and proceeds against a remaining defendant, a motion *in limine* is ordinarily filed by the plaintiff, seeking to bar admission of any evidence of the third-party settlement agreement." *Votolato*, 747 A.2d at 461. "The trial justice then is able to later reduce any jury award rendered in favor of the plaintiff by the corresponding amount of the third-party settlement." *Id.* Accordingly, in order to offset any award for plaintiffs by the amount of the settlement agreement, the settlement amount need not be disclosed unless and until there is a verdict in plaintiffs' favor. Only after a judgment in plaintiffs' favor is rendered does the amount of the settlement agreement become

---

[4] The settlement agreement in this case was reached in 2020; however, G.L. 1956 § 10-6-7 of the Uniform Contribution Among Tortfeasors Act was amended in 2021. *See* P.L. 2021, ch. 410, § 1; P.L. 2021, ch. 411, § 1. The amendment repealed the portion of the law that provided that a joint tortfeasor would receive the greater benefit of either (1) the sum paid by a released tortfeasor or (2) the percentage of fault of the released tortfeasor. It also limited the credit that a joint tortfeasor could receive to the amount paid by the released tortfeasor, regardless of fault. "Th[e] act [took] effect upon passage and [applies] to all claims pending at the time of passage or asserted thereafter; provided, however, that [the act does] not apply to, affect or impair releases executed before the passage date." Public Laws 2021, ch. 410, § 3; P.L. 2021, ch. 411, § 3.

relevant to the apportionment of damages—a calculation completed by the court, not the jury.

The defendant has failed to set forth any argument as to how production of the settlement amount is "reasonably calculated to lead to the discovery of admissible evidence." *DeCurtis*, 152 A.3d at 420 (emphasis omitted). Instead, defendant contends that disclosure is consistent with the judiciary's goal of fairness and encouraging settlements. More pointedly, defendant argues that disclosure of the settlement amount "will place [plaintiffs] and [defendant] on equal footing when evaluating claims, defenses, and potential damages at trial" and will "provide [him] equal access to information which is relevant to [his] trial strategy." In short, defendant contends he needs to know the amount of the settlement in order to determine whether settlement would be in his best interest.

Contrary to defendant's assertion, Rule 26(b)(1) does not allow for discovery purely to assist in settlement strategy. It permits discovery regarding matters, not privileged, relevant to the subject matter involved in a pending action, including claims or defenses. *See* Super. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party * * *.").

The defendant nevertheless relies on a trial court decision in the United

States District Court for the District of Rhode Island, *Bennett v. La Pere*, 112 F.R.D. 136 (D.R.I. 1986), a medical malpractice case, to support his argument that the amount of the settlement was discoverable prior to trial. *See Bennett*, 112 F.R.D. at 137. The plaintiffs in that case reached a settlement with the physician defendants, settling all their claims against the physicians, including their *pro rata* shares of any joint tortfeasor liability; the plaintiffs did not reach a settlement agreement with the hospital defendant and the settlement agreement left open the plaintiffs' claims against the hospital. *Id.* The hospital then moved for production of the settlement documents. *Id.*

The court granted the hospital's motion to compel disclosure of the settlement agreement. *Bennett*, 112 F.R.D. at 141. The court reasoned that the terms and dimensions of the settlement agreement between the plaintiffs and the settling codefendants were relevant to the litigation in several respects. *Id.* at 138. First, the damages the plaintiffs could collect from the hospital would depend on the terms and amount of the settlement agreement. *Id.* Second, the termination of the case against the physicians could have been crafted so as to insulate the hospital from liability. *Id.* at 138-39. Third, the court explained, "the shape and form of the partial settlement may illumine the viability (or strategic wisdom) of an attempt by the [h]ospital to rejoin the [p]hysicians as third-party defendants." *Id.* at 139. Finally, the court also noted that, although Rule 408 of the Federal Rules of

Evidence prohibits evidence at trial of the settlement, there is an exception when the evidence is offered for a purpose other than "to prove liability for or invalidity of the claim or its amount" such as for proving "bias or prejudice of a witness." *Id.* The court further concluded that "if any doubt lingers, the fundamental fairness of assuring that the plaintiffs and the remaining defendant will approach the bargaining table armed with the same knowledge of the earlier (completed) settlement surely tips the scales." *Id.* at 140.

Unlike in *Bennett*, however, in the case before us all of the terms and conditions of the settlement agreement were provided to defendant, with the sole exclusion of the amount of the settlement.[5]

---

[5] The defendant also relies on the 2015 Amendment to Rule 26(b)(1) of the Federal Rules of Civil Procedure. The Advisory Committee Notes to the 2015 Amendment explain:

> "The former provision for discovery of relevant but inadmissible information that appears 'reasonably calculated to lead to the discovery of admissible evidence' is * * * deleted. The phrase has been used by some, incorrectly, to define the scope of discovery. As the Committee Note to the 2000 amendments observed, use of the 'reasonably calculated' phrase to define the scope of discovery 'might swallow any other limitation on the scope of discovery.' The 2000 amendments sought to prevent such misuse by adding the word 'Relevant' at the beginning of the sentence, making clear that 'relevant means within the scope of discovery as defined in this subdivision * * *.' The 'reasonably calculated' phrase has continued to create problems, however, and is removed by these amendments. It is replaced by the direct statement

We consider the reasoning of *Tempel v. Murphy*, 30 A.3d 992 (Md. Ct. Spec. App. 2011), to be more persuasive. *Tempel* was also a medical malpractice case. *See Tempel*, 30 A.3d at 993. In that case, the plaintiffs settled with some, but not all of the defendants prior to trial. *Id.* After learning of the settlements, the remaining defendants moved to compel the production of the settlement documents, arguing that they were needed "to engage in an intelligent assessment of the risks and benefits of proceeding to trial versus settlement." *Id.* at 999. The trial court granted the motions as to the language of the releases but denied the motions as to the monetary amount therein. *Id.* at 996. As a result, the plaintiffs provided redacted copies of the releases prior to trial and the defendants were only provided the specific dollar amounts of the settlements after the conclusion of the trial. *Id.* The jury returned a verdict for the plaintiffs and the remaining defendants appealed, arguing, *inter alia*, that the trial court erred by refusing to allow the nonsettling defendants to

that 'Information within this scope of discovery need not be admissible in evidence to be discoverable.' Discovery of nonprivileged information not admissible in evidence remains available so long as it is otherwise within the scope of discovery."

We note, however, that no such amendment has been made to Rule 26(b)(1) of the Rhode Island Superior Court Rules of Civil Procedure. Nevertheless, we remain unconvinced that the amount of the settlement is relevant to any claim or defense in the case at bar and therefore conclude that it does not fall within the scope of discovery.

- 15 -

inspect the amounts of the two settlement agreements prior to the judgment. *Id.* at 993-94.

The judgment was affirmed on appeal, *Tempel*, 30 A.3d at 994, and the court explained that "[a]bsent some fact in a given case that would change the result, the settlement amount contained in a joint tortfeasor release is not relevant at the pre-verdict stage." *Id.* at 1001. The settlement amounts, the court explained, "did not, in any way, concern the facts relevant to a determination of [the defendants'] liability or the amount of any damages; thus, they were not relevant at the pre-verdict stage." *Id.* Rather, the court reasoned, "the information sought by [the defendants] did not become relevant until after the verdicts were rendered, and the amounts were necessary to determine the apportionment of damages as to each party under the Maryland Contribution Among Joint Tort-Feasors Act." *Id.* at 1001-02. After final judgment, the settlement amount would be relevant only to the issue of "the ministerial apportionment of damages * * *." *Id.* at 1002 (quoting *Porter Hayden Co. v. Bullinger*, 713 A.2d 962, 967 (Md. 1998)).

The court also emphasized that the defendants had received a copy of the settlement agreement prior to trial, with the amount of consideration redacted. *Tempel*, 30 A.3d at 1002. The court explained that the terms of the agreement "were relevant pre-trial because the nature of the release would determine whether [the

defendants], if liable, would get an automatic *pro rata* reduction or whether the jointfeasor status of the settling parties would have to be adjudicated." *Id.* The amount within the settlement agreement, however, was provided to the defendants at the stage of the proceedings in which that amount became relevant—after a judgment was entered. *Id.*

Although not binding on this Court, we also find two scholarly decisions of the Presiding Justice of the Rhode Island Superior Court addressing this issue most persuasive. In *Alessio v. Capaldi*, No. PC 06-5850, slip op. (R.I. Super. filed Oct. 16, 2007), a negligence action, the plaintiff settled its claims with one of three defendants. *Alessio*, slip op. at 1. One of the nonsettling defendants then filed a motion to compel production of a copy of the settlement agreement, including disclosure of the terms of the settlement. *Id.* at 2. The defendant argued that the settlement agreement must be disclosed because: (1) if found to be a joint tortfeasor, it would be entitled to a setoff of any funds paid by the settling defendant against any judgment for the plaintiff; (2) plaintiff could obtain a windfall if he had recovered the full value of his claims from the settlement agreement; and (3) the defendant was entitled to explore issues of bias with respect to the settling defendant, and therefore, the terms of the settlement agreement were relevant. *Id.* The plaintiff objected, arguing that the settlement agreement was inadmissible pursuant to Rule 408, that the amount of the agreement was not relevant to any issue in the case, and

that the amount need only be disclosed when apportioning damages, after a verdict, pursuant to the Uniform Contribution Among Tortfeasors Act. *Id.*

The Presiding Justice denied the defendant's motion to compel, reasoning that the settlement agreement was not discoverable. *Alessio*, slip op. at 4, 5. She explained that:

> "Although [d]efendant is correct that it is entitled to setoff, immediate disclosure of the settlement agreement is not required. * * *
>
> "Defendant's second argument, the possibility that [p]laintiff may receive a 'windfall,' is also unavailing. The full value of [p]laintiff's claims will be determined at trial. Disclosure of the settlement agreement and the amount paid by [the settling defendant] sheds no light on what the ultimate value of [p]laintiff's claim will be. Also, as noted by [p]laintiff, '* * * the possibility of a windfall is precisely defeated by the Uniform Contribution Among Tortfeasors Act, * * * §10-6-7.'" *Id.* at 4-5.

We endorse this reasoning and also agree with the court's resolution of the question of bias:

> "As to bias, [d]efendant merely states that since [a defendant] has settled, [the settling defendant] 'may now provide favorable testimony on [plaintiff's] behalf in any upcoming trial in this matter.' Such rank speculation as to present or future bias is a wholly insufficient reason for ordering disclosure of the settlement agreement." *Id.* at 5.

The Presiding Justice again addressed the discoverability of a settlement agreement in *Lepore v. A.O. Smith Corp.*, No. PC 12-1469, slip op. (R.I. Super. filed

- 18 -

May 10, 2017).  In *Lepore*, the defendants moved to compel the production of certain settlement releases between the plaintiff and settling codefendants, arguing that the releases were required in order for them to properly evaluate any potential setoff of damages due to their status as joint tortfeasors. *Lepore*, slip op. at 1-2.  The plaintiff objected, arguing that the defendants were not entitled to production of the settlement documents because they were irrelevant to the defendants' liability and would only become relevant after trial in order to apportion damages. *Id.* at 3.

The court iterated "that the joint tortfeasor language contained in a settlement agreement is irrelevant to a determination of liability," and emphasized that Rule 408 "provides that a settlement agreement is not admissible evidence for proving or disproving liability of a claim or its amount." *Lepore*, slip op. at 5.  Furthermore, "[w]hile it is true that a settling defendant's liability for contribution depends on whether [the defendant] paid his [or her] share of any damage award, this determination cannot be made until a final judgment has been rendered against the moving defendant." *Id.* at 4-5 (internal quotation marks omitted).  Accordingly, "releases and the amounts contained therein would only be relevant to the ministerial action of apportioning damages, and an exchange of such documents is not necessary or relevant until later at trial. * * * Unless relevant to some issue *other* than the setoff of damages, evidence of the settlement releases [is] inadmissible at trial." *Id.* at 6. The Presiding Justice determined that "[s]ince the settlements [were] inadmissible

- 19 -

themselves, the [d]efendants [had] not demonstrated how production of the settlement agreements [was] reasonably calculated to lead to the discovery of admissible evidence." *Id.* She therefore denied the defendants' motion. *Id.* at 11.

As in *Tempel*, *Alessio*, and *Lepore*, in the case at bar, we are not convinced that the amount of the settlement agreement is relevant to any issue in this case other than the apportionment of damages, which becomes relevant only after a verdict is reached. The amount that the settling codefendants agreed to pay is not relevant to a determination of defendant's liability at trial. Thus, discovery of the settlement amount will be appropriate only after a judgment in plaintiffs' favor is entered.

We therefore conclude that the trial justice abused her discretion in granting the defendant's motion to compel production of a complete, unredacted copy of the settlement agreement, including the settlement amount.

## Conclusion

For the reasons set forth herein, we quash the decision of the Superior Court ordering production of the settlement amount paid by the settling codefendants. The papers in this case may be remanded to the Superior Court with our decision endorsed thereon.

- 20 -

**Justice Long, dissenting.**  In seeking the issuance of the extraordinary writ of certiorari in this matter, Patricia Noonan, individually and in her capacity as Executrix of and on behalf of the beneficiaries of the Estate of William J. Noonan, Linda Byrne, Terri Pare, Karen LeCam, and Steven Noonan (plaintiffs), presented the following question for this Court's consideration: Did the trial justice err in granting the motion to compel filed by Sundaresan T. Sambandam, M.D. (defendant or Dr. Sambandam), because Dr. Sambandam's request for production of the settlement amount is not reasonably calculated to lead to the discovery of admissible evidence?  I acknowledge the appeal of reading Rule 26(b)(1) of the Superior Court Rules of Civil Procedure in a manner that resolves discovery disputes in a consistent manner; however, my reading and understanding of the rule and this Court's longstanding embrace of "[t]he philosophy underlying modern discovery[,]" *Cabral v. Arruda*, 556 A.2d 47, 48 (R.I. 1989), compel the opposite conclusion to the question presented.  Because I believe that trial justices should retain the authority to evaluate objections to discovery requests on a case-by-case basis and to compel the production of settlement agreements in their entirety after considering the circumstances of each case, I respectfully dissent.

Rule 26(b)(1) provides that:

> "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or

- 21 -

defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any documents, electronically stored information, or tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

In *DeCurtis v. Visconti, Boren & Campbell, Ltd.*, 152 A.3d 413 (R.I. 2017), this Court explained that "[c]*ritically*, our discovery rules are liberal and have been construed to 'promote broad discovery.'" *DeCurtis*, 152 A.3d at 421 (emphasis added) (quoting *Henderson v. Newport County Regional Young Men's Christian Association*, 966 A.2d 1242, 1246 (R.I. 2009)). In fact, we have consistently and repeatedly stressed the exceeding breadth of the rules governing discovery and noted that the "principal limitations are that the information sought must be relevant to the pending matter and not privileged." *Plante v. Stack*, 109 A.3d 846, 853 (R.I. 2015); *Pastore v. Samson*, 900 A.2d 1067, 1074 (R.I. 2006) (same); *see also DePina v. State*, 79 A.3d 1284, 1289 (R.I. 2013) ("This Court previously has indicated that Rule 26—along with the remaining provisions of the Rules of Civil Procedure pertaining to discovery—should be construed liberally so as to promote broad disclosure among parties during the pretrial phase of litigation."). We have also said that "[o]ur discovery rules are designed to clarify the scope of the issues involved in

litigation and to facilitate effective preparation for trial[,]" and have further implied that trial justices should consider "the spirit of the [Rules of Civil Procedure] as expressed in Rule 1, 'to secure the just, speedy, and inexpensive determination of every action.'" *Bashforth v. Zampini*, 576 A.2d 1197, 1201-02 (R.I. 1990).

Moreover, as the majority aptly highlights, there are numerous reported and unpublished decisions and orders that have thoughtfully evaluated whether to permit or forbid the production of full settlement agreements, but reached differing conclusions based on the facts of each case. I am persuaded that *Bennett v. La Pere*, 112 F.R.D. 136 (D.R.I. 1986), serves as an insightful and evenhanded method for resolving the question presented to this Court. Similar to this matter, the trial judge in *Bennett* granted a nonsettling defendant's motion to compel the full disclosure of a settlement agreement between the plaintiff and the prior, settling defendants in that action. *Bennett*, 112 F.R.D. at 137-38, 141.

Although the court in *Bennett* granted the nonsettling defendant's motion pursuant to Rule 26(b) of the Federal Rules of Civil Procedure, after considering the nearly identical language contained in both rules, its reasoning and underlying rationale bear repeating in the context of this case. Specifically, the trial judge in *Bennett* considered the broad nature of civil discovery, as mandated by the rules of civil procedure, and the fact that discoverable evidence does not depend on its later admissibility at trial. *Bennett*, 112 F.R.D. at 138. He concluded that settlement

- 23 -

agreements, including their fiscal components, are relevant in the context of discovery based on their ability to reveal admissible evidence such as the potential bias or prejudice of a witness involved in the litigation. *Id.* at 139.

Finally, the court reviewed the underlying considerations present in this context and determined that the full disclosure of settlement agreements creates the most desirable outcome. *See Bennett*, 112 F.R.D. at 141. In reaching this conclusion, the trial justice stated the following:

> "To the extent that the [nonsettling defendant's] ability realistically to evaluate the plaintiffs' case against it depends on an awareness of the terms and conditions of the settlement with the codefendants—and it plainly depends upon that information to a meaningful degree— the remaining defendant should not be left to grope blindly in the dark. So long as the policy of the Rules is the promotion of the 'just, speedy, and inexpensive' resolution of cases, then fair settlements must always be encouraged. Fairness cannot be achieved when one side is needlessly blindfolded." *Id.* at 141.

My review of the record compels me to conclude that the trial justice did not abuse her discretion in granting Dr. Sambandam's motion to compel the production of the settlement agreement in this case, which arises from an unfortunate death that occurred more than eight years ago. While the exact figure from the settlement agreement is generally inadmissible pursuant to Rule 408 of the Rhode Island Rules of Evidence, the rule delineates clear exceptions. *See* R.I. R. Evid. 408. For example, Rule 408 permits the introduction of evidence related to settlement offers if the party

- 24 -

seeking admission attempts to demonstrate a witness's bias or prejudice. *See id.* ("This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."). Depending on the financial terms of the settlement agreement at issue, Dr. Sambandam's receipt of this information could certainly lead to otherwise admissible evidence of bias. Thus, while I acknowledge that the trial justice failed to provide an elaborate explanation of her reasoning in this matter, I believe that a sufficient basis exists to uphold her decision based on this Court's *de novo* review of the applicable law.

Furthermore, I firmly believe that prohibiting the discoverability of full settlement agreements divests trial justices of their discretion to permit disclosure of these agreements on a case-by-case basis. In the discovery context, we afford trial justices with broad discretion based on the circumstances of each case and we refrain from interfering with their decisions, absent an abuse of discretion. *See State v. Lead Industries Association, Inc.,* 64 A.3d 1183, 1191 (R.I. 2013) ("However, '[i]n granting or denying discovery motions, a Superior Court justice has broad discretion,' which 'this Court will not disturb * * * save for an abuse of that discretion.'") (quoting *Colvin v. Lekas*, 731 A.2d 718, 720 (R.I. 1999)). By prohibiting trial justices from allowing the production of full settlement agreements,

- 25 -

the majority diminishes the trial justice's paramount role in resolving discovery disputes based on the facts and circumstances of each case.

After review of the record and consideration of the parties' written and oral submissions, it is further my view that this case simply does not contain any "unusual or exceptional circumstances" that warrant the issuance of the extraordinary writ, and that this Court should therefore deny and dismiss the petition and quash the writ as improvidently granted. *See Kelly v. Kelly*, 104 R.I. 650, 651, 247 A.2d 905, 905-06 (1968).

# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Patricia Noonan, individually and in her capacity as Executrix of and on behalf of the beneficiaries of the Estate of William J. Noonan, et al. v. Sundersansan Sambandam, M.D. |
| **Case Number** | No. 2022-22-M.P.<br>(PC 16-4767) |
| **Date Opinion Filed** | June 27, 2023 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Netti C. Vogel |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Joseph P. Marasco, Esq. |
| | For Defendant:<br><br>Paul F. Galamaga, Esq. |